```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:
                                                          03-MD-01570 (GBD)(SN)
    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001                                    REPORT &
                                                          RECOMMENDATION

-----------------------------------------------------------------X
```

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

    Anaya, et al. v. Islamic Republic of Iran, No. 18-cv-12341

    Three plaintiffs in Anaya, et al. v. Islamic Republic of Iran, No. 18-cv-12341 ("Anaya"), move for default judgments against the Islamic Republic of Iran. See ECF Nos. 8687, 8688, 8689.[1] They ask the Court to find that they are the "functional equivalents" of immediate family members of people killed in the 9/11 Attacks and thus entitled to solatium damages. ECF No. 3363 at 29. The Court recommends granting their motion.

## DISCUSSION

The Court assumes familiarity with this multidistrict litigation and addresses only the relevant procedural and factual issues. The Court granted default judgment as to liability for the plaintiffs in Anaya, No. 18-cv-12341, against Iran on October 5, 2021. See ECF No. 7178. The only outstanding question is whether Donovan Lanham, Gary Lanham, and Jasmine Jackman (collectively, the "Plaintiffs") are entitled to damages under the Court's "functional equivalent" framework. The Plaintiffs seek (1) findings that their relationships with their late stepfather,

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

Michael W. Lowe, were functionally equivalent to those of biological children; (2) solatium damages consistent with those granted to biological children of people killed in the 9/11 Attacks; (3) prejudgment interest; and (4) leave to seek punitive or other damages later. See ECF No. 8687.

I.   **Functionally Equivalent Family Members**

The Court consistently awards solatium damages to those who lost loved ones in the 9/11 Attacks. See, e.g., ECF No. 2618, adopted at 2623. These damages are generally restricted to spouses, parents, children, and siblings but in limited circumstances are extended to people who are functionally equivalent to immediate family.

To determine whether a plaintiff's relationship is functionally equivalent to that of an immediate family member, the Court uses the Hoglan IV framework. See ECF Nos. 3363, adopted at 3384 (Hoglan II, setting out functional equivalence standards); 3676, adopted at 3795 (Hoglan IV, refining functional equivalence framework). That framework requires a fact-intensive, plaintiff-by-plaintiff analysis. The Court weighs how long the plaintiff and decedent lived together; their degree of emotional, financial, and social connection; and factors particular to certain relationships, such as how long a couple was together, whether they were engaged to be married, the age of a child when a relationship formed, or the continued involvement of a biological parent in a child's life. See ECF Nos. 3363 at 10–12, 14–16; 3676 at 7–8, 11, 13–14.

After the Court finds a functionally equivalent relationship, it must determine the appropriate amount of damages. In most cases, it awards the same amount of solatium damages awarded to immediate family members. Plaintiffs who are functionally equivalent to spouses receive $12,500,000; those functionally equivalent to parents and children receive $8,500,000; and functionally equivalent siblings receive $4,250,000. See ECF No. 2618, adopted at 2623 (establishing solatium damages amounts for immediate family); ECF Nos. 3363 at 16 (applying

those amounts to functionally equivalent family members); 4175 at 7 (same); 5483 at 21–23 (same). In some cases, however, the Court awards reduced damages to plaintiffs whose relationships are functionally equivalent but not fully comparable to those of immediate family. See, e.g., ECF Nos. 3363 at 22 (recommending a stepmother receive half the normal award because she entered the decedent's life when he was 11 years old); 5387 at 7 (recommending a stepsibling receive half the normal award because he began living with the decedent at age 14).

As it has done many times before, the Court applies the Hoglan IV framework to the Plaintiffs and their evidence below. See, e.g., ECF Nos. 4175 (applying Hoglan IV); 5387, adopted at 5950 (same); 8264 (same).

### A. Donovan Lanham

Donovan Lanham ("Donovan") is the stepson of Michael W. Lowe ("Michael"), who was killed in the 9/11 Attacks. See ECF No. 8688-1 at 1. Donovan, his mother, and his siblings lived with Michael from 1991 (when Donovan was three) until Michael's death in 2001 (when Donovan was 14). See id. at 2; ECF No. 8688-2 at 2. Donovan's mother married Michael on April 6, 1993. Donovan met his biological father only once when he was six or seven, so it was Michael who provided for him and his siblings and encouraged them as they grew up. See id. He worked as an electrician to support the family, and sometimes brought Donovan and his brother along in his truck. See ECF Nos. 8688-1 at 3; 8688-2 at 2. Michael spent quality time with Donovan and his siblings every Saturday—watching movies with the family, taking the kids to Coney Island, and teaching Donovan to play chess. See ECF No. 8688-2 at 2. And Donovan was profoundly affected by Michael's death. See id. He dropped out of school and fell into a 10-year "downward spiral." Id. When he pulled himself out of it, he realized he "needed to make [Michael] proud." Id. He has since focused on building a life for his own son, Donovan Michael Lanham, whom he named after his late stepfather—"the only dad he ever had." Id. at 1–2.

Michael treated Donovan like his own son in every way, so the Court concludes that Donovan was the functional equivalent of Michael's child and recommends awarding him $8,500,000 in solatium damages.

**B.     Gary Lanham**

Gary Lanham ("Gary") is Donovan's younger brother and Michael's stepson. See ECF No. 8688-1 at 2. He does "not remember a time before Michael was a member of [their] family." ECF No. 8688-3 at 1. Gary was just one year old when the family moved in with Michael in Brooklyn and 11 when Michael died. See ECF No. 8688-1 at 2–3. Michael supported him and his family "morally, emotionally, and financially." ECF No. 8688-3 at 2. He picked Gary up from school and had snowball fights with him and his siblings; he taught Gary to ride a bike, to play football and basketball, and "to be creative and to figure out how to fix things on [his] own." Id. at 1–2. Michael's work as an electrician was the reason Gary later went into the trades. See id. at 1. After Michael's death, Gary kept Michael's memory present with tattoos on his arms. See id. at 3–5. When Gary tells his kids about their grandfather, he tells them about Michael—he has no memory of his biological father. See id. at 2–3.

As with Donovan, the Court concludes that Gary was the functional equivalent of Michael's child and recommends awarding him $8,500,000 in solatium damages.

**C.     Jasmine Jackman**

Jasmine Jackman ("Jasmine) is Michael's stepdaughter. See ECF No. 8688-1 at 2. She was a newborn when her family moved in with Michael and a toddler when her mother married him, so she grew up thinking Michael was her biological father. See ECF No. 8688-1 at 2; 8688-4 at 1. She only learned he was her stepfather after he was killed when she was ten. See ECF No. 8688-4 at 1. Just as he did with Donovan and Gary, Michael treated Jasmine as his own. See id. at 1–2. He was her "protector." Id. at 2. He worked hard to provide for the family, but he always

4

carved out time for Jasmine. See id. He took her to the barbershop every Sunday and let her help clean his car. See id. When Michael died, Jasmine's life changed. She lost the only father she ever knew and was forced to "grow up young." Id. at 2.

As with her brothers, the Court concludes that Jasmine was the functional equivalent of Michael's child and recommends awarding her $8,500,000 in solatium damages.

## CONCLUSION

The Plaintiffs have demonstrated functionally equivalent relationships, so the Court recommends granting their motion and awarding each Plaintiff solatium damages of $8,500,000 with prejudgment interest at a rate of 4.96 percent per annum, compounded annually, from September 11, 2001, to the date of judgment. See ECF No. 3383 (adopting 4.96 percent prejudgment interest rate). The Court further recommends permitting the Plaintiffs to apply for punitive or other damages later and in a manner consistent with any applicable future Court rulings.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   July 7, 2023
         New York, New York

\*         \*         \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). These objections shall be filed with the Clerk

of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).